UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

                           Plaintiff,

     v.                                       5:98-CR-418

KEITH JENNINGS

                           Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

**DECISION and ORDER**

**I.     INTRODUCTION**

The law firm of Baach, Robinson & Lewis PLLC filed a petition pursuant to 21 U.S.C. § 853(n)(2) seeking $4,139.10 of the substitute property that is the subject of the Court's Supplemental and Amended Preliminary Order of Forfeiture. The law firm claims entitlement to these funds for representing Jennings in a civil action. Currently before the Court is the government's motion to dismiss the petition pursuant to 21 U.S.C. § 853(n)(6)(A) and (B) contending that Petitioner lacks standing to contest the forfeiture.

**II.    FACTS**

On March 17, 1999, a jury in the United States District Court of the Northern District of New York convicted Keith Jennings of engaging in a criminal enterprise, narcotics conspiracy, money laundering, and possession with intent to distribute controlled substances. He was also convicted on a special forfeiture count in the amount of $1.5 million. On August

3, 1999, United States District Judge Howard G. Munson issued a Preliminary Order of Forfeiture imposing a $1.5 million money judgment liability on Jennings and directing him to forfeit his personal property to partially satisfy this judgment.  Pursuant to § 853(n)(1), notice of the forfeiture order was published in a newspaper of general circulation in Syracuse, New York, once a week for three consecutive weeks.  (Mot. to Dismiss Ancillary Petition, Boykin Aff. ¶ 5).

In or about April 2, 2004, in a separate action in the District Court for the District of Columbia, Jennings challenged the validity of the Drug Enforcement Administration's administrative forfeiture of $17,071. See Jennings v. U.S. Dep't of Justice, No. 3 Civ. 1309 (D. D.C. Feb. 23, 2005). That action sought the recovery of $17,071 in cash seized from Jennings during a stopover at Atlanta's Hartsfield-Jackson International Airport on January 7, 1998. The District Court for the District of Columbia appointed Michael J. Zoeller from the law firm of Baach, Robinson & Lewis PLLC to represent Jennings in that action.  (See Decl. of Michael J. Zoeller ¶ 2). The law firm entered into a retainer agreement with Jennings to represent him pro bono. Id. ¶ 3; see also id., Pet. Ex. C.  In this retainer agreement, Jennings agreed to pay the law firm's costs from the proceeds of any award that he might obtain. Id., Pet. Ex. C.

Learning of the D.C. action, on January 12, 2005 the Government made an application in the District Court for the Northern District of New York to substitute assets. Specifically, the Government sought the disputed $17,071 to partially satisfy the outstanding $1,500,000 forfeiture money judgment against Jennings.

On February 23, 2005, the District Court for the District of Columbia granted summary judgment to Jennings and directed the return of the $17,071 to Jennings.

However, the Court stayed the return of these funds to Jennings pending a decision by Judge Munson regarding the Government's motion to substitute assets. On April 4, 2005, Judge Munson granted the Government's application to substitute assets and issued a Supplemental and Amended Preliminary Order of Forfeiture. (Supp. Amended Preliminary Order of Forfeiture (No. 791)).

On May 12, 2005, Baach, Robinson & Lewis PLLC filed an ancillary petition pursuant to 853(n)(2) seeking $4,319.10 from the disputed $17,071 as compensation for its pro bono representation of Jennings. The law firm claims an interest similar to that of a bona fide purchaser under 21 U.S.C. § 853(n)(6)(B) in $4,319.10 of the disputed $17,071. (Pet. Resp. to U.S. Motion to Dismiss Pet. at 3 (No. 821)). The law firm argues that it "purchased" an interest when Mr. Jennings signed a retainer agreement consenting to pay the law firm's costs from any award that he might receive as a result of their legal services. Id. The law firm further contends that the Government may not recover the law firm's share of the $17,071 because the money is only substitute assets to satisfy Jennings's outstanding $1,500,000 money judgment under 21 U.S.C. § 853(p) and is not proceeds of a criminal enterprise. Relying on United States v. Nava, 404 F.3d 1119 (9th Cir. 2005), the law firm argues that in forfeiting substitute assets, the Government may only recover Jennings's interest and not the interest of innocent parties. (Pet. for Hearing on Forfeiture of Property, at 4 (No. 805)).

The Government moves to dismiss the petition pursuant to 21 U.S.C. § 853(n)(6)(A) and (B). The Government argues that the law firm is a general creditor of Jennings and does not have standing to contest the forfeiture of $17,071. (Mot. to Dismiss, at 16 (No. 817)).

- 3 -

III.     **DISCUSSION**

The criminal forfeiture statute at issue in this case, 21 U.S.C. § 853, is applicable in all felony drug cases and requires the forfeiture of "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation." 21 U.S.C. § 853(a)(1). Title to forfeited property vests in the U.S. Government "upon the commission of the act giving rise to forfeiture. . . ." 21 U.S.C. § 853(c). Subsection 853(p)[1] permits the Government to secure substitute assets to satisfy a forfeiture judgment, including a money judgment. See United States v. Candelaria-Silva, 166 F.3d 19 (1st Cir. 1999); United States v. Numisgroup Intl. Corp., 169 F. Supp. 2d 133 (E.D.N.Y. 2001); United States v. Davis, 2001 WL 47003 (S.D.N.Y. 2001).[2] By their very nature, substitute assets are not connected to the original crime. United States v. Saccoccia, 354 F.3d 9, 12–13 (1st Cir. 2003).

Subsection 853(n) of Title 21 of the United States Code specifically governs third-party interests in criminal forfeiture ancillary proceedings. When a third party asserts a legal interest in property forfeited to the Government, the Court must hold a hearing to adjudicate

---

[1]   Section 853(p) provides as follows:

[I]f any property described in subsection (a) of this section, as a result of any act or omission of the defendant—
(A) cannot be located upon the exercise of due diligence;
(B) has been transferred or sold to, or deposited with, a third party; (cont.)
(C) has been placed beyond the jurisdiction of the court;
(D) has been substantially diminished in value; or
(E) has been commingled with other property which cannot be divided without difficulty . . .

 . . .the court shall order the forfeiture of any other property of the defendant, up to the value of any property described in subparagraphs (A) through (E). 21 U.S.C. § 853(p).

the validity of the alleged interest in the property. 21 U.S.C. § 853(n)(2); United States v. Ribadeneira, 105 F.3d 833, 834 (2d Cir. 1997). At this hearing, the Court determines whether:

> (A) the petitioner has a legal right, title, or interest in the property . . . [that] was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section . . . .

21 U.S.C. § 853(n)(6); United States v. Monsanto, 491 U.S. 600, 604 (1989); United States v. Watkins, 320 F.3d 1279, 1282 (11th Cir. 2003)(finding that § 853(n)(6) protects only two classes of petitioners); U.S. v. Nektalov, 440 F. Supp. 2d 287, 295 (S.D.N.Y. 2006). The petitioner has the burden of proof to demonstrate that he meets one of these two categories. See Pacheco v. Serendensky, 393 F.3d 348, 351 (2d Cir. 2004). If the court determines by a preponderance of the evidence that the petitioner falls within either of these two categories, the court must amend the preliminary forfeiture order. 21 U.S.C. § 853(n)(6). The court must then restore the properly apportioned part of the seized property to the third party petitioner. Id. Following the court's disposition of all third party petitions, the Order of Forfeiture, as amended based on the disposition of all petitions, gives the Government "clear title to property that is the subject of the order of forfeiture." 21 U.S.C. § 853(n)(7).

      To determine whether the law firm is entitled to payment of its costs from the forfeited substitute assets under 21 U.S.C. § 853(n)(6)(A), it is necessary to analyze when the assets vested in the U.S. Government. The Government argues that the "relation-back" provision of 21 U.S.C. § 853(c) precludes the law firm from claiming an interest in any part of

the substitute assets because the Government's interest in the money vested before the law firm was appointed as counsel for Jennings or its retainer agreement with Jennings became effective. In support of its argument, the Government cites United States. v. McHan, 345 F.3d 262 (4th Cir. 2003). In McHan, the Fourth Circuit held that § 853(c), the relation-back provision, applies to substitute assets in addition to "tainted assets." Therefore, title to substitute assets vests in the United States upon commission of the crime. McHan, 345 F.3d at 272. However, in United States v. Saccoccia, 354 F.3d 9 (1st Cir. 2003), the First Circuit disagreed with the Fourth Circuit, holding that the relation-back provision does not apply to substitute assets. See also United States v. Salvagno, 2006 WL 2546477, *19 (N.Y.N.D. 2006) (". . . the Saccoccia cases confirm . . . that there is no relation back doctrine applicable to substitute assets.").[3]

Although the Second Circuit has not specifically ruled on when substitute assets vest in an ancillary proceeding, its holding in United States v. Gotti, 155 F.3d 144 (2d. Cir. 1998), offers guidance in answering this question. In Gotti, the court addressed whether the U.S. Government can restrain substitute assets prior to trial. The Second Circuit held that the Government could not because Congress only specifically referenced § 853(a) property in § 853(c). Gotti, 155 F.3d at 148–49.[4] This specific reference to § 853(a) property had the effect of excluding unreferenced § 853(m) substitute property from the pretrial restraint provision. Id.; see also United States v. Field, 62 F.3d 246, 249 (8th Cir. 1995); United States v. Ripinsky, 20 F.3d 359, 363–64 (9th Cir. 1994); In re Assets of Martin, 1 F.3d 1351,

---

[3] Saccoccia specifically interpreted a provision of the Racketeer Influenced and Corrupt Organizations (RICO) Act. This Act is "analogous" to § 853. U.S. v. Schwimmer, 968 F.2d 1570, 1582, n.8 (2d Cir. 1992).

[4] Gotti was also interpreting the RICO Act. The RICO pretrial restraint provision is "nearly identical" to the pretrial restraint provision of 21 U.S.C. § 853. Gotti, 155 F.3d at 149.

1359 (3d Cir. 1993); United States v. Floyd, 992 F.2d 498, 502 (5th Cir. 1993); United States v. Miller, 26 F. Supp. 2d 415, 431–33 (N.D.N.Y. 1998). In reaching this conclusion, the Second Circuit applied the doctrine of *inclusion unius est exclusion alterius* of strict statutory construction. Applying this reasoning, the relation-back principle would not apply to substitute assets because § 853(c) only refers to § 853(a) forfeited property. See U.S. v. Kramer, 2006 WL 3545026 *6 (E.D.N.Y. 2006).

The common law "taint theory" also supports a finding that the relation-back principle does not apply to substitute assets. The common law "taint theory" only applies the relation-back principle to a defendant's "tainted" assets. See Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 627 (1989). The assets at issue here were substitute assets and determined by the District Court of the District of Columbia to belong to Jennings in the civil action. Based on this case law and reasoning, this Court concludes that the $17,071 did not vest in the Government at the time of the commission of the underlying crime. Rather, these substitute assets vested in the Government upon the order granting the motion to substitute assets.

Regardless of when the Government's interest in the substitute assets vested, the law firm's interest of $4,319.10 in legal fees of the civil judgment never vested under 21 U.S.C. §853(n)(6)(A). The law firm signed a Retainer Agreement with Jennings on or around November 5, 2003 that stated, "[w]e will not bill you for our costs unless you obtain an award through judgment or settlement. You agree to pay our costs from the proceeds of any award . . ." (Zoeller Decl., Pet. Ex. C). When it signed this agreement, the law firm only had a contingent interest that depended upon the outcome of the civil litigation in the District of Columbia. For this contingent interest to vest, Jennings had to receive the proceeds of an

award.  Jennings never received the proceeds of any award.  Although the District Court of the District of Columbia found in favor of Jennings, it stayed the return of the $17,071 pending Judge Munson's decision regarding the Government's motion for substitute assets. (Pet. for Hearing on Forfeiture App'x, Ex. 9, p.4 (No. 807) ("Ordered that . . . return of funds is stayed pending a decision on the government's motion for substitute assets in a supplemental and amended preliminary order of forfeiture in United States v. Keith Jennings, No. 98-cr-418.")).  The court granted the order and the stay in the very same award. Furthermore, the stay increased the likelihood that Jennings would not receive the proceeds of the award.  Under these circumstances, the law firm's interest never vested.

The next question is whether the law firm was a bona fide purchaser for value that had no reasonable cause to believe that the property was subject to forfeiture as substitute assets under § 853(n)(6)(B).  State law governs the definition of a bona fide purchaser for value under § 853(n)(6)(B).  See Pacheco, 393 F.3d at 353 (citing United States v. Harris, 246 F.3d 566, 571 (6th Cir. 2001)).  A bona fide purchaser is a person who pays valuable consideration, acts in good faith, and has no notice of the outstanding rights of others.  1618 Twenty-First Street Tenants' Ass'n Inc. v. The Phillips Collection, 829 A.2d 201, 205 (D.C. 2003) (noting that D.C. courts apply the common law definition of bona fide purchaser); Black's Law Dictionary 1271 (8th ed. 2004).  This interest must be in a specific asset.  U.S. v. BCCI Holdings (Luxemborg), S.A., 980 F. Supp. 10 (D. D.C. 1997)(holding that petitioner lacked standing under RICO provision identical to 21 U.S.C. § 853(n)(6)(B) because petitioner could not assert a legal interest in a specific asset).

By comparison, a general unsecured creditor is a person with a definite claim against another but who upon giving credit takes no rights against specific property of the

debtor.  See In re Bailey, 883 A.2d 106, 117–19 (D.C. 2005); Black's Law Dictionary 397.  An unsecured creditor is not a bona fide purchaser under § 853(n)(6)(B).  Ribadeneira, 105 F.3d at 836; United States v. BCCI Holdings (Luxembourg), S.A., 46 F.3d 1185, 1191–92 (D.C. Cir. 1995) (holding that general creditors cannot qualify as bona fide purchasers under 18 U.S.C. § 1963(1)(6)(B), a provision of the Racketeer Influenced and Corrupt Organizations Act that is substantively identical to §853(n)(6)(B)); United States v. Campos, 859 F.2d 1233, 1238 (6th Cir. 1988).  In Ribadeneira, the Second Circuit held that a person holding a check drawn on a defendant's forfeited bank account was not a bona fide purchaser of any specific assets, but instead was a general creditor.  Id.

    The law firm is not a bona fide purchaser for value because it cannot assert, and never purchased, an interest in a specific asset.  There is no doubt that it was a good faith provider of services, but it is a general, unsecured creditor.  The law firm signed a retainer agreement with Jennings.  The agreement stated that the law firm would only receive payment if Jennings obtained the proceeds of an award in the D.C. civil action.  The District of Columbia stayed return of monies until Judge Munson decided the Government's substitute assets motion.  Judge Munson granted this motion.  The monies were never returned to Jennings and thus the law firm never took specific rights against the forfeited $17,071.  As a general creditor, it is not a bona fide purchaser of value under § 853(n)(6)(B).  See Ribadeneira, 105 F.3d at 836.

    Under § 853(n)(6)(B), a petitioner also must prove that they reasonably did not know that the money was subject to forfeiture. The law firm professes ignorance of the money judgment and preliminary order of forfeiture. It states, "[p]etitioner was reasonably without cause to believe that Mr. Jennings had an outstanding order of criminal forfeiture

because Petitioner did not discuss the criminal proceedings with Mr. Jennings and was not familiar with his judgment and commitment order." (Pet. Resp. to U.S. Motion to Dismiss, at *3 (No. 821)).  The law firm reasonably should have known that the $17,071 might be subject to forfeiture as substitute assets.  Actual notice is not required, only constructive notice.  See BCCI Holdings, 961 F. Supp at 296 (holding that petitioners reasonably should have known BCCI's assets would be subject to forfeiture based on public record and newspaper articles).  The law firm knew that they were challenging the forfeiture of $17,071 in cash found in Jennings's pockets by the Drug Enforcement Agency at Hartsfield Atlanta Airport.  The law firm also knew that Jennings was incarceratedp.  A reasonable person, and particularly a reasonable attorney, might have inquired as to the reasons that Jennings was incarcerated and whether a money judgment was outstanding.  The Government posted notice of the forfeiture order in a newspaper of general circulation four years before the law firm agreed to represent Jennings. (Mot. to Dismiss, Boykin Aff. ¶ 5).  Moreover, it was clear from the docket that Jennings had been convicted on a special forfeiture count in the amount of $1.5 million.  Thus, this information was available to the firm as a matter of public record.  See BCCI Holdings, 961 F. Supp. at 296.

## IV. CONCLUSION

Petitioner has failed to prove a legal interest in the substitute assets under either § 853(n)(6)(A) or (B).  Accordingly, the petition should be DISMISSED.

IT IS SO ORDERED.

Dated: June 25, 2007

Thomas J. McAvoy
Senior, U.S. District Judge